UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL MURPHY,

    Plaintiff,

v.

VAIVE WOOD PRODUCTS CO.,

    Defendant.
                                 /

Case No. 2:17-cv-11513

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

On May 11, 2017, Plaintiff Crystal Murphy filed a complaint against her former employer, Vaive Wood Products Co. ("Vaive"), alleging that Vaive committed two violations of Title VII. First, she claimed that Vaive tolerated and promoted a hostile work environment of severe and pervasive sexual harassment. Second, she alleged that Vaive terminated her employment for complaining about sexual harassment in the workplace.

Currently pending before the Court is Vaive's motion for summary judgment. ECF 13. The Court held a hearing on April 17, 2018. For the reasons below, the Court will grant in part and deny in part Vaive's motion for summary judgment.

**BACKGROUND**

Vaive Wood produces wooden pallets used for shipping. Murphy began work at Vaive in October 2015; her early work consisted of stamping pallets for heat treatment and color coding the pallets, ECF 13-2, PgID 88, but Vaive employees did whatever work was needed to produce the pallets, *id.* at 89. In addition to stamping the pallets, therefore, Murphy also cut, stacked, and nailed the pallets, drove forklifts, and unloaded and loaded trucks. *Id.* The entire production of pallets occurred in a single factory. Allan Scroggs,

1

Vaive's Vice President, oversaw the day-to-day management of the company. ECF 13, PgID 56. Phil Kotewa served as the Plant Supervisor (or Plant Manager) and was the primary supervisor of the factory's activities. Below Kotewa were a number of mid-level supervisors, including Chris Romero, who worked as Vaive's assembly foreman. *Id.* During Murphy's employment, only one other woman worked at Vaive, and she served on the business side. Murphy worked in the male-dominated factory setting. *Id.* All parties agree that Murphy's first few months were unremarkable.

Starting in February 2016, Murphy alleges that multiple incidents of harassing conduct toward her occurred. She references different alleged instances in her complaint, her responses to interrogatories, and her deposition. For clarity and simplicity, the Court will list the relevant allegations with the name of the person who committed the alleged act.

*Wesley Ivory[1]*
- In February 2016, Murphy reported the first alleged incident of harassment, that Ivory touched her leg.[2]
- In April 2016, Ivory told Murphy he wanted her to be his "Twinkie." ECF 1, PgID 2.
- Also in April 2016, Ivory told Murphy: "I'm going to . . . make you choke on my dick." *Id.*
- On several occasions, Ivory smacked Murphy's butt and grabbed at her legs and breasts. *Id.* at 3; *see also* ECF 13-18, PgID 193 (identifying Ivory as the individual who performed the acts alleged in the complaint).
- Moreover, Ivory would grab Murphy's leg "[a]ll the time." ECF 13-2, PgID 93.
- On an unknown date, Ivory allegedly talked about Murphy's bra size to another coworker. ECF 13-18, PgID 190.
- On multiple occasions, Ivory allegedly told Murphy he would rape her. *Id.* at 191.

*Jason Moran*
- On an unknown date, Moran shook a forklift that Murphy was standing on and stared at her breasts while they also shook. She pushed them together with her

---

[1] The parties deposed Ivory, but neither attorney asked him about any incident other than the February 2016 occurrence.

[2] The Court will discuss the incident further, *infra*, because the parties focus their arguments extensively on it.

arms to make them stop shaking to which Moran responded: "great, now your cleavage looks better." ECF 1, PgID 2; *see also* ECF 13-18, PgID 193 (identifying Moran as the person who performed the acts alleged in the complaint).
- On May 31, 2016, Moran sent Murphy a photo of a woman's tongue nailed to a surface with the caption: "Thou shalt not snitch."[3]

"*Ralph*"[4]
- On an unknown date, "Ralph" walked behind Murphy with a sign that read: "wide load." ECF 13-18, PgID 190.

*John Tieman and Unknown Coworker*
- On an unknown date, John Tieman held a sign with a bullseye behind Murphy's back while an unknown coworker allegedly shot a nail gun at the target. ECF 13-18, PgID 190.

*Gilbert S.*
- On numerous occasions, Gilbert allegedly propositioned Murphy and made statements that he regularly propositioned prostitutes. ECF 13-18, PgID 191; ECF 13-2, PgID 99.

*Phil Kotewa*
- Whenever Murphy complained of inappropriate touching, Kotewa would allegedly assign Murphy to harder work. ECF 13-2, PgID 95.
- When Murphy left her saw running during a break, Kotewa placed a sign at her workstation that read: "hey dingy, turn off saw for breaks." ECF 13-2, PgID 96.

Murphy alleges that she raised several complaints to Kotewa or Romero after each incident, ECF 1, PgID 3, reported all issues to Romero, ECF 13-18, PgID 190, and eventually submitted a letter to Al Scroggs and Phil Kotewa complaining about the sexual harassment, ECF 13-12, PgID 162. Only one incident received significant treatment in the parties' briefing, however: the February 2016 incident with Wesley Ivory.

---

[3] Murphy alleges that Moran sent the photo in retaliation for her sexual harassment complaints. ECF 14, PgID 233. A review of the Facebook messages reveals that Moran did not arrive for work on time that day, Murphy teased him for his tardiness, and Moran sent the photo regarding his tardy arrival to work. *See* ECF 13-19, PgID 208–09. Regardless, non-sexual communications may contribute to a hostile work environment.

[4] Plaintiff's responses to the interrogatories put Ralph's name in quotations. The Court does not know if this is because Plaintiff (1) does not know his name, (2) refers to his nickname, or (3) uses a pseudonym to protect the identity of the individual. Regardless, the Court will refer to "Ralph" as Murphy does.

The parties hotly dispute the February 2016 incident. On February 23, 2016, Murphy alleged that Ivory either "touched" her thigh, ECF 13-5, PgID 125, or "grabbed [her] between [her] legs," ECF 13-2, PgID 91. Apparently, Tieman—Murphy's coworker and roommate at the time—witnessed the interaction. *Id.* at PgID 92.[5] Murphy either reported the incident immediately to Romero, *id.* at PgID 93, or to Kotewa, ECF 13-5, PgID 125. Kotewa then allegedly discussed the incident with Ivory, who claimed that he touched Murphy's thigh by accident, and then Kotewa issued Ivory a written warning and sent him home as a suspension. *Id.*; *see also* ECF 13-7, PgID 152 (employee warning report from the incident). Ivory testified that he did bump Murphy's leg, but claims he neither received a written warning nor was disciplined. ECF 14-2, PgID 260. Ivory further denied ever purposefully grabbing or touching Murphy's leg. *Id.* at PgID 262. When shown the employee warning report, Ivory testified that he had never seen a document like it before. *Id.* at PgID 267. Ivory further represented that Murphy "would try and mess with [him]. She would go tell Phil something, something [he] was doing and be lying." *Id.* at PgID 259. Ivory testified that he and Murphy were "cool" and that periodically Murphy would drive him home or pick up lunch for him. *Id.* at PgID 256–59. Murphy recalled many fewer friendly interactions with Ivory than he did. ECF 13-2, PgID 91, 102.

After the February 2016 incident, Romero and Kotewa checked in with Murphy about her working conditions. In June 2016, Murphy wrote "Vaive sucks" on a set of client-ready pallets. Kotewa reprimanded Murphy for the incident. Later that day, Murphy approached Karen Turcato who worked on the business side of Vaive Wood and expressed frustration with her treatment and Vaive's lack of response to her complaints.

---

[5] It appears that the parties did not depose Tieman.

4

*Id.* at 94. Turcato notified Al Scroggs who relayed the information to Kotewa; Kotewa convened a meeting with Romero, Turcato, and Murphy. Again, the parties' recollections of the meeting differ. Murphy contends that she voiced the concerns she had raised with Turcato. Kotewa recounts that Murphy spent the majority of the meeting discussing her issues with Vaive's safety rules, ECF 13-5, PgID 130–31, and "changed her February statement" that Ivory had "grabbed [her] in the crotch area" and that an unnamed employee witnessed the incident. ECF 13-10, PgID 157.

Finally, on August 18, 2016, Murphy wrote a letter identifying her "previous issues with sexual talk toward me and sexual touchings to [sic] me" over the previous months. ECF 13-12, PgID 162. She delivered a copy of the letter to Scroggs, Kotewa, and Romero. ECF 13-2, PgID 101. She notes that, in response to her complaints, Kotewa and Romero encouraged her to come to them not only for sexual harassment concerns but also any other issues. *Id.* A few days prior to her letter, Murphy went to Romero "for an issue, and [] was told to just clean it up and nothing was done." *Id.* Romero indicated that the issue related to saw dust piles in the factory and Murphy's obligation to clean up the piles. ECF 13-6, PgID 148. Murphy, for her part, was uncertain what issue precipitated the letter. ECF 13-2, PgID 101. At the end of the letter, Murphy alleged that she had dust "flung at her, hit with a board, and . . . called a 'mother fucker' and threatned [sic]." ECF 13-12, PgID 162. On August 23, 2016, Vaive terminated Murphy's employment. In the several months after Murphy's termination, numerous employees left Vaive during a work slowdown.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5

Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Moreover, the Court may not "make credibility determinations or weigh the evidence." *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir. 1994).

## DISCUSSION

I.  <u>Hostile Work Environment</u>

For a hostile-work-environment claim under Title VII, a plaintiff must establish that:

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (quotation omitted and alteration adopted).

The parties do not dispute the first or third elements. They do dispute, however, whether the plaintiff was subject to unwelcome harassment, whether the harassment was severe or pervasive, and whether the defendant knew of the harassment.

Defendant avers that the second requirement is not met because Plaintiff was not subjected to unwelcome harassment. Defendant describes Plaintiff's allegations as unreliable because she cannot recount specifics, ECF 13, PgID 68–69, and that Plaintiff "failed to provide tangible evidence that shows she was subjected to an 'abusive working environment,'" *id.* at 69. Moreover, Defendant argues that Vaive's testimony and documents contradict Plaintiff's claims.

At the motion for summary judgment stage, however, those arguments are unpersuasive. Whether Plaintiff is credible or reliable is not a matter for a judge to decide. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"). Further, when an employee "makes allegations of ongoing harassment" the "inability to recount any more specific instances goes to the weight of her testimony, a matter for the finder of facts." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). Murphy alleges repeated and ongoing harassment of a sexual and non-sexual nature. Whether those allegations are credible in light of Defendant's affidavits and testimony to the contrary is a question of fact for the jury. The existence of a genuine issue of material fact about whether Murphy was subject to sexual harassment precludes a finding of summary judgment on Murphy's hostile work environment claim.

The case presents a paucity of verified facts besides the deposition testimony and affidavits of Murphy, Kotewa, Romero, and Ivory. At each turn, the parties dispute nearly all material facts. Murphy alleges a vast conspiracy by which her managers and coworkers at Vaive subjected her to severe and pervasive sexual harassment. Murphy does not remember telling her family members or friends about her harrowing ideal. ECF 13-2, PgID 102. She remembers scarce details about her transgressors or of the allegedly repeated misconduct that occurred just over a year before her deposition. And those shortcomings are striking.

In light of the obvious inconsistency and scarcity of Murphy's allegations, Defendant essentially asks the Court to say whether a reasonable jury would believe Murphy or find her credible. But here, the summary judgment standards are in tension. The Court must assume all facts and reasonable inferences in the light most favorable to the Plaintiff. The Court must also avoid weighing the evidence or making credibility determinations. The Court may rule in favor of the moving party, however, if no reasonable jury could find for the non-moving party. For Defendant to prevail, the Court would be required to determine whether a reasonable jury would find Murphy credible. The Court cannot make that fact determination now. The Court will therefore deny Defendant summary judgment as to Murphy's hostile work environment claim.

II.  Retaliation Claim

Murphy claims that Vaive terminated her in retaliation for her reports of alleged sexual harassment. Title VII precludes an employer from retaliating against an employee for opposing unlawful employment practices. *See generally* 42 U.S.C. § 2000e-3(a). A plaintiff can establish a retaliation claim through direct or circumstantial evidence. Plaintiff

relies solely on circumstantial evidence. Retaliation claims supported by circumstantial evidence are examined using the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 319–20 (6th Cir. 2017). Under *McDonnell Douglas* and *Burdine*, a plaintiff must first establish a prima facie case of retaliation. The prima facie showing creates a presumption of unlawful retaliation. Second, the defendant can rebut the presumption by proffering a legitimate, non-discriminatory reason for its action. Third, if the defendant successfully produces a legitimate reason, the burden shifts back to the plaintiff "to demonstrate by a preponderance of the evidence that [defendant's] proffered reason was a mere pretext for discrimination." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517 (2013) (abrogation recognized by *Gordon*, 686 F. App'x at 320).

A. The Prima Facie Showing.

The prima facie showing of retaliation contains four components: (1) the plaintiff engaged in protected activity, (2) defendant knew plaintiff engaged in protected activity, (3) the defendant took an adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002). The parties dispute only whether Plaintiff here made her showing on the first and fourth elements of the prima facie case.

Plaintiff must first show that she engaged in protected activity. Murphy engaged in protected activity by reporting the alleged harassment in February and June of 2016. The

9

parties dispute, however, whether Murphy's August 18, 2016 letter qualifies as protected activity. In the letter, Murphy identifies her "previous issues with sexual talk toward me and sexual touchings to [sic] me" over the previous months. ECF 13-12, PgID 162. She notes that, in response, Kotewa and Romero encouraged her to come to them not only for sexual harassment concerns but also other issues. *Id.* At the end of the letter, Murphy alleged that she had dust "flung at her, [was] hit with a board, and . . . called a 'mother fucker' and threatned [sic]." *Id.* Even if the letter does not contain specific references to new sexual harassment claims, conduct evincing "anti-female animus" may contribute to the creation of a hostile work environment. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (collecting cases). The letter, therefore, may be considered protected activity concerning the "constellation of surrounding circumstances" of Murphy's alleged hostile work environment. *Id.* at 564 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

Plaintiff must also make a showing that there was a causal connection between her protected activity and her termination. *Weigel*, 302 F.3d at 381. "When an adverse employment action occurs very close in time after an employer learns of a protected activity," that temporal proximity constitutes "evidence of a causal connection" and satisfies the prima facie showing. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Here, Murphy re-engaged in protected activity in her August 18 letter reaffirming her concerns about the work environment and her alleged treatment by coworkers. Vaive terminated Murphy within five calendar days of her delivery of the letter, which is "very close in time" under any standard. Murphy, therefore, satisfied her prima facie showing.

B. Defendant's Legitimate, Non-Discriminatory Reason

If a plaintiff makes a prima facie showing, the burden shifts to the Defendant to proffer a legitimate, non-discriminatory reason for terminating the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. An employer must either "explain what [it] has done or produce[] evidence of legitimate nondiscriminatory reasons." *Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Burdine*, 450 U.S. at 256).

Vaive provided evidence that it terminated Murphy for three legitimate, nondiscriminatory reasons: (1) a slowdown of work, (2) Murphy's disregard for and combative stance towards safety rules, and (3) poor work attitude. Each of those reasons is a legitimate and non-discriminatory reason for terminating an employer. Vaive avers that employee attrition during the period of Murphy's termination evinces a slowdown of work. Moreover, there is evidence that Murphy repeatedly failed to comply with safety regulations and argued with her managers about compliance. Finally, on at least one documented occasion Murphy expressed a poor attitude towards Vaive. In one instance, she wrote "Vaive sucks" on a set of pallets destined for a client. ECF 13-2, PgID 94; ECF 13-9, PgID 155. Altogether, Defendant sufficiently proffered legitimate, non-discriminatory reasons for terminating Murphy.

C. Pretext

After the Defendant proffers a legitimate, non-discriminatory reason for terminating the Plaintiff, the Plaintiff must proffer evidence sufficient to allow a reasonable jury to infer that the Defendant's reason for the termination was pretextual. Plaintiff can demonstrate pretext by showing that the Defendant's justification "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant

the challenged conduct." *Jackson*, 814 F.3d at 779 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Plaintiff must present "enough evidence to . . . rebut but not disprove" Vaive's proffered rationale. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) (quoting *Shazor v. Prof'l Transmit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014)). Moreover, Plaintiff must demonstrate pretext by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509–10 (1993).

The first type of showing consists of evidence that the Defendant's proffered reasons lack factual bases. Plaintiff primarily attacks the Defendant's characterization that it underwent a reduction in workforce. She points to the evidence that she was the only terminated employee and that other employees voluntarily left Vaive. The argument is unavailing. Defendant contends that it fired Murphy because of a "lack of work." ECF 13, PgID 73. Murphy's lay-off and the subsequent voluntary departure of multiple other employees tend to show that Vaive experienced a decreased workload. Murphy does not present any evidence to show that Vaive's diminished amount of work is factually false. Furthermore, Murphy does not point to any evidence showing that she complied with and did not complain about safety rules or enjoyed her work.[6]

The second showing requires Plaintiff to admit the factual basis of the employer's decision, further admit that the conduct could motivate dismissal, but then argue that the "sheer weight of circumstantial evidence of retaliation makes it more likely than not that

---

[6] In fact, Murphy admits that she did hate her job, but asserts that it was because of the poor work environment. ECF 14, PgID 240. That showing does not challenge the factual basis of Vaive's reason for her termination. Regardless, Vaive offered two other independent reasons for her termination.

the employer's explanation is pretext[.]" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). At this stage, Plaintiff must introduce "sufficient evidence for a reasonable jury to find that" the employer's explanation was pretextual. *Id.* Plaintiff offers insufficient evidence showing that Vaive's reasons did not "actually motivate" its decision. *See Jackson*, 814 F.3d at 779.

The third type of showing consists of evidence that other employees, primarily those outside the protected class, who engaged in conduct substantially identical to Plaintiff's behavior were not fired. *See Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 838 (6th Cir. 2017) (citation omitted). Here, Murphy challenges Vaive's citation of disregard for safety rules as a reason for her termination. She notes that Kotewa reminded "probably [one] half [of] the building" to wear protective gear. ECF 13-5, PgID 123. Murphy is correct that there is no evidence that Vaive terminated or disciplined other employees for not wearing protective gear. Vaive represented, however, that it was not only Murphy's routine disregard or forgetfulness of the safety rules, but also her continual complaints about and challenges to the safety rules that motivated her dismissal. *Id.* at 143. Plaintiff offers no additional evidence to rebut Vaive's assertion that she was the only employee that routinely complained about the rules and challenged the rules' existence and application. Plaintiff has failed in making the showing.

Plaintiff failed to demonstrate that Vaive's three proffered reasons for her termination—the slowdown in workload, her obstinacy regarding safety rules, and her poor attitude—either had no factual basis, did not actually motivate Vaive, or differed from Vaive's treatment of similarly situated coworkers. Plaintiff cannot show, therefore, that

13

Vaive's reasons were pretextual. The Court will grant Defendant summary judgment on Plaintiff's retaliation claim.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment [13] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED**.

                                      s/ Stephen J. Murphy, III
                                      STEPHEN J. MURPHY, III
                                      United States District Judge

Dated: April 24, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 24, 2018, by electronic and/or ordinary mail.

                                      s/ David Parker
                                      Case Manager